**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ETHICAL SOCIETY OF POLICE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA J. BONDI, in her official capacity as Attorney General of the United States, *et al.*,<br><br>Defendants. | No. 1:25-cv-13115-IT |

**JOINT STATUS REPORT**

Pursuant to the Court's order that "[a]fter conferring, and no later than [February 11, 2026], the parties shall file a joint status report regarding the status and plans for resumption of operations of CRS [(Community Relations Service)]," the parties hereby submit the following report, setting forth their respective updates and positions, in advance of the status conference set for January 13, 2026.  *See* ECF No. 79.

**Defendants' Position**

By way of background, and as previously explained, CRS previously functioned as a standalone component with the Department of Justice and was transferred to the Executive Office for United States Attorneys (EOUSA) in autumn 2025, as part of a Department-wide reorganization.  *See generally*, Decl. of Denise Nazaire ("Nazaire Decl.") ¶¶ 5, 9, ECF No. 51-1. Specifically, on November 2, 2025, CRS and its functions were realigned from a stand-alone component to a unit within EOUSA.  *See id*. ¶ 9.  CRS continues to exist as a unit within EOUSA.  *See* Decl. of Jonathan Pelletier ("Pelletier Decl.") ¶ 3.  One CRS employee moved with

CRS to EOUSA as part of the realignment (*see* Nazaire Decl., ¶ 9), and the remaining employees were subject to a reduction in force ("RIF")—specifically, fourteen CRS employees received RIF notices in September 2025 that were effective October 31, 2025. *See* Decl. of Jolene Lauria ("Lauria Decl.") ¶ 3, ECF No. 75-1. On January 9, 2026, RIF recission notices were sent to thirteen CRS employees who were separated by RIF, resignation, or retirement.[1] *See id*. Thereafter, for one of these CRS employees, the RIF recission notice was rescinded, at the employee's request. *See* Pelletier Decl. ¶ 4, n.1. That left twelve CRS employees who were reinstated retroactive to November 1, 2025, with the choice to report to duty at CRS on February 9, 2026 (as explained in the prior report). *See id*. On February 9, nine of these employees reported for work at CRS. *See id*.

In total, CRS now has 32 employees in service, including the employee who moved with CRS, as referenced above, and 31 reinstated employees. *See id*. ¶ 4. The 31 reinstated employees includes nine returning CRS employees (*i.e.,* who were subject to the since-rescinded RIF); six employees reassigned from the Department's Office for Access to Justice; and sixteen employees reassigned from the Department's Organized Crime Drug Enforcement Task Forces (OCDETF). *See id*. All 31 reinstated employees are on detail within EOUSA undergoing developmental training for integration into EOUSA (almost all of these employees have no prior experience with EOUSA). *See id*. ¶ 5. The duration of this detail is expected to be approximately 90 days. *See id*. The salary of these 31 employees will not be charged to CRS during the detail period. *See id*.

---

[1] As previously explained, of the fourteen CRS employees who received RIF notices, one employee ultimately did not separate from the Department of Justice (he was reassigned to a different position within the Department prior to the effective date of the RIF). Thus, RIF recission notices were sent to thirteen employees. *See* Lauria Decl. ¶ 3.

Since the last status report, Congress appropriated $20 million for CRS for fiscal year 2026. *See id*. ¶ 6. The DOJ FY 2026 Spend Plan is due to Congress (specifically the House and Senate Committees on Appropriations) on March 9, 2026. *See id*. The Spend Plan will identify, at a high level, how DOJ plans to spend its appropriations, which includes the $20 million CRS appropriation. *See id*.

The Spend Plan is currently under development, and specific "plans for resumption of operations of CRS" (as called for by the Court's Order) are not yet set. *See id*. ¶ 7. Presently, EOUSA is managing the February 9 onboarding of the reinstated employees. *See id*. Defendants expect that the Department will have additional information to report about its plans for CRS further into the 90-day detail period. *See id*. It is also possible Congress may provide feedback on the Department's Spend Plan.

Defendants emphasize that these recent developments at CRS do not change their fundamental position that this case falls outside of district court jurisdiction, and that Plaintiffs' Administrative Procedure Act claims fail because they do not seek judicial review of discrete, final agency action. *See generally*, ECF No. 51. Also, given the recent appropriation of $20 million to CRS, the pending development of a Spend Plan, and the onboarding this week of the reinstated employees, Defendants believe that the case is not ripe for adjudication now in any event.

Defendants therefore propose filing another joint status report regarding "the status and plans for resumption of operations of CRS" (per the Court's Order) no later than April 9, 2026. This will provide the Court an opportunity to further assess these developments, particularly with an eye to determining whether the matter is ripe for adjudication, and allow the parties to propose next steps, including briefing on mootness and other jurisdictional arguments.

3

In this light, Defendants oppose Plaintiffs' request below, that the Court rule on Plaintiffs' pending motion for a preliminary injunction and Plaintiffs' Motion for Discovery. Defendants respectfully believe that this would be neither efficient nor appropriate, because the matter is in flux, and not yet ripe for adjudication.

**Plaintiff's Position**

Defendants' update confirms four critical points: (1) CRS personnel are not currently performing CRS functions; (2) no operational plan exists for resuming those functions; (3) congressional funds appropriated for CRS are not being used to deliver CRS services; and (4) Plaintiffs remain without the services that form the basis of their irreparable harm.[2] Although Defendants represent that thirty-two reinstated employees are now "in service" at CRS, they also acknowledge that all those individuals are detailed elsewhere **for 90 days**, are **not performing CRS functions**, and are not funded through CRS (despite specific congressional appropriation of $20 million for CRS's operations for FY26). Meanwhile, DOJ has **no timeline—let alone an operational plan**—for the resumption of CRS services.

Defendants' representations do not describe a functioning agency capable of complying with its statutory mandate to "provide assistance to communities and persons therein in resolving disputes, disagreements, or difficulties relating to discriminatory practices." 42 U.S.C. § 2000g-1. Instead, they describe an entity that exists in name only while its statutory functions remain dormant. As explained below, Defendants' persistence in refusing to comply with CRS's

---

[2] Plaintiffs understand Defendants intend to submit one or more declarations with this status report. Plaintiffs have not had an opportunity to review any such declaration. Plaintiffs object to the extent Defendants submit any new information that Plaintiffs have not had a chance to review and respond to, and ask for an opportunity to address the declaration(s) at the upcoming status conference and/or to submit a responsive declaration, if necessary.

statutory mandate compels Plaintiffs to ask the Court to rule on their pending Motion for Preliminary Injunction ("PI Motion"), as the unlawful shuttering of CRS in 2025 continues to cause Plaintiffs irreparable harm, with no apparent end in sight.

*First*, the reinstatement of CRS employees was not a discretionary favor; it was compelled by Congress and by equity. Plaintiffs have consistently maintained that rescission and reinstatement were required by the November Continuing Resolution and also necessary to remedy the unlawful shuttering that stripped Plaintiffs of services and undermined the public interest. *See* Pls.' PI Reply, Doc. No. 63 at 8-9.

*Second*, despite DOJ's suggestion that "CRS is taking requests" for services, there remains no commitment—let alone evidence—of when, how, or even *whether* CRS will resume providing *any* services to Plaintiffs and others. In their prior status report, Defendants demurred on offering a plan for CRS's operations, claiming that the plan would "depend on how many CRS employees decide[d]" to return. *See* Doc. No. 75 at 3. Defendants now report that "specific plans for the resumption of operations of CRS. . . are not yet set" and will depend on a forthcoming DOJ spend plan to Congress in March. But they offer no explanation for why such a plan—which DOJ itself is responsible for preparing—must wait until March. Defendants' inexplicable stalling suggests a willful intent to continue defying Congress by "operating" CRS in name only.

*Third*, Plaintiffs are also concerned about the representation that 32 reinstated employees are now "in service" with CRS (including 9 from CRS and the rest from other offices). The limited information available to Plaintiffs contradicts this representation. For example, based on second-hand reports, Plaintiffs understand that at least some reinstated employees have been explicitly told they **will not work for CRS**, and some have been advised they will be assigned to specific, **non-CRS functions**. In light of this, Plaintiffs cannot be confident that *any* reinstated

employees have truly been assigned to CRS.  But even accepting DOJ's account at face value, **CRS cannot perform its statutory functions for at least 90 more days**, because every reinstated employee is assigned to "EOUSA training" and not CRS duties.  And Defendants make no representation that those employees would be moved to CRS duties *even after* that 90-day detail concludes.  Against this backdrop, Plaintiffs have serious concerns that DOJ's purported "assignment" of employees to CRS—with no plan to have them perform CRS at any time in the near future—is a sham to evade accountability for an unlawful agency closure.

*Fourth*, Plaintiffs continue to lack access to the services they lost as a result of Defendants' unlawful closure of CRS.  Plaintiffs previously detailed the withdrawal and termination of crucial CRS services to them, as a direct result of Defendants' unlawful efforts to dismantle CRS.  In the wake of DOJ's announcement last month that it would accept requests for services by email, a number of Plaintiffs have had initial communications with CRS's sole employee, Denise Nazaire, to try to secure new or resumed services from CRS.  At least initially, these communications seemed to hold the promise that CRS was acting in good faith to restore services to Plaintiffs and others.  Defendants' most recent status update—and in particular, the facial inconsistency between their claim to have 32 CRS employees and their inability to show any plan for operating CRS—casts those communications in a different light.  Plaintiffs are concerned that these newly opened channels of communication—even if pursued in good faith by the sole career CRS employee—may be a pretext for DOJ leadership to conceal (or least delay discovery of) their intent to leave CRS hobbled.  Regardless, intake capability is a far cry from providing the mediation and conciliation services Congress directed and, more recently, funded.  Because CRS personnel are not performing CRS functions, Plaintiffs remain unable to obtain the mediation, facilitation, and consultation services they lost as a result of Defendants' unlawful shuttering of CRS in 2025.

For all these reasons, Plaintiffs submit that recent developments do not resolve the legal disputes presented by their Complaint or pending PI Motion; instead, they underscore them. The government's evolving declarations and status reports—without any commitments on services, reinstatement of previously withdrawn engagements, or operational criteria—leave Plaintiffs and affected communities subject to continuing irreparable harm. Rolling updates cannot substitute for adjudication of Plaintiffs' claim for preliminary relief under these circumstances. Until CRS is actually restored to providing the services unlawfully withdrawn from Plaintiffs and communities nationwide, this case remains very much live. The legal questions are briefed; the harm persists; and the government's own submissions show a doubling-down on their prior position that CRS is not statutorily required to offer any services to the public. A ruling on Plaintiffs' PI Motion is necessary to provide enforceable, effective relief in the face of Defendants' continued intransigence.

Defendants' claim that this case is not "ripe" is without merit (though they would be free to argue this point under the briefing schedule proposed below). Without any new operational plan for CRS, this Court is left with the purported "realignment" plan that Defendants previously submitted—which would reduce CRS to a clearinghouse, unable to provide direct mediation and other services. This does not comport with Defendants' statutory or APA obligations for the reasons already briefed. *That* issue is certainly ripe for review. Moreover, the ongoing absence of services is not a temporary uncertainty but the result of DOJ's current, acknowledged lack of any plan for resuming CRS operations. Therefore, the dispute is not speculative or premature — it concerns a present, ongoing absence of statutory services. This matter is also not moot, when Defendants have failed to show that CRS is presently functioning—or imminently will function—as the neutral, confidential mediation and conciliation service Congress created.

Accordingly, Plaintiffs propose:

1. Supplemental briefs limited to five pages per side, confined to discussion of the impact (if any) of the CRS personnel and operational changes since January 9, 2026, on Plaintiffs' PI Motion.

2. Plaintiffs' supplemental brief due February 18, 2026.

3. Defendants' supplemental brief due February 23, 2026.

4. If Defendants raise any new justiciability arguments, such as mootness or ripeness, Plaintiffs may file a short reply brief, limited to three pages, due February 27, 2026.

5. PI motion taken under submission upon completion of the above, with no further declarations absent leave.

This targeted approach allows the parties to address only genuinely new, material facts while preserving the record already before the Court.

Plaintiffs also submit that their Motion to Compel Completion of the Administrative Record and for Discovery remains live.  Indeed, the internal inconsistencies in Defendants' recent representations about CRS's status—which are further inconsistent with a genuine desire to have CRS perform its statutory functions—underscore the need for discovery on the original decisionmaking to supplement the deficient administrative record.

Dated: February 11, 2026                              Respectfully submitted,

                                                      BRETT A. SHUMATE
                                                      Assistant Attorney General

                                                      YAAKOV M. ROTH
                                                      Principal Deputy Assistant Attorney General

                                                      DIANE KELLEHER
                                                      Branch Director
                                                      Federal Programs Branch

8

*s/ Steven M. Chasin*

Steven M. Chasin (D.C. Bar# 495853)
Jessica A. Lundberg
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0747
Email: steven.m.chasin2@usdoj.gov

*Counsel for Defendants*

*/s/ Kyle R. Freeny*
Kyle R. Freeny
(DC Bar No. 1684764 – *admitted pro hac vice*)
WASHINGTON LITIGATION GROUP
1717 K Street NW
Washington, DC 20006
Telephone: (202) 521-8750
KFreeny@WashingtonLitigationGroup.org

Ana Muñoz
(Mass. Bar No. 569233)
ZALKIND DUNCAN & BERNSTEIN LLP
2 Oliver Street, Suite 200
Boston, MA 02110
Telephone: (617) 742-6020
AMunoz@ZalkindLaw.com

*Counsel for Plaintiffs*

9

## **CERTIFICATION OF SERVICE**

I hereby certify that a true copy of the above document was served upon all attorneys of record by electronic filing on February 11, 2026.


/s/ Steven M. Chasin