UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ETHICAL SOCIETY OF POLICE; NAACP ST. LOUIS COUNTY; MISSIONARY BAPTIST STATE CONVENTION OF MISSOURI; TWO WRASSLIN' CATS ACCORD; OUT ACCOUNTABILITY PROJECT; BERKSHIRE RESOURCES FOR INTEGRATION OF DIVERSE GROUPS AND EDUCATION; NAACP STATE CONFERENCE COLORADO-MONTANA-WYOMING; PEACEMAKERS LODGE; PIKES PEAK SOUTHERN CHRISTIAN LEADERSHIP CONFERENCES 1; WELLSPRING HEALTH ACCESS; and HAITIAN COMMUNITY HELP & SUPPORT CENTER,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>PAMELA J. BONDI, in her official capacity as Attorney General of the United States; and U.S. DEPARTMENT OF JUSTICE,<br><br>　　　　Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*     Civil Action No. 1:25-cv-13115-IT |

MEMORANDUM & ORDER

February 25, 2026

TALWANI, D.J.

　　In this action, Plaintiffs Ethical Society of Police, NAACP St. Louise County, Missionary Baptist State Convention of Missouri, Two Wrasslin' Cats Accord, Out Accountability Project, Berkshire Resources for Integration of Diverse Groups and Education, NAACP State Conference Colorado-Montana-Wyoming, Peacemakers Lodge, Pikes Peak Southern Christian Leadership Conferences 1, Wellspring Health Access, and Haitian Community Help & Support Center challenge the "dismantling" of the Community Relations Service ("CRS"), a component within

the U.S. Department of Justice ("DOJ") that provides mediation and conflict resolution services to community groups, local governments, and law enforcement. See Compl. for Injunctive and Declaratory Relief ¶¶ 2, 5 [Doc. No. 1]; id. ¶ 3 (referring to CRS as "America's Peacemaker"). Plaintiffs allege that Defendants Attorney General Pamela J. Bondi and DOJ's actions to eliminate CRS violate the Administrative Procedure Act and the Constitution. Id. ¶¶ 76–95.

Pending before the court is Plaintiffs' Motion to Compel Completion of Administrative Record, Production of Privilege Log, and for Limited Discovery [Doc. No. 65].[1]

## I.    Background[2]

On December 5, 2025, Defendants filed the Administrative Record [Doc. No. 47-1] and a Certified Index to the Administrative Record [Doc. No. 47]. Plaintiffs assert several deficiencies with Defendants' submission, see Pls.' Mot. to Compel Completion of Admin. R., Produc. of Privilege Log, and for Limited Disc. [Doc. No. 65], and "seek three separate but related forms of relief to address the deficiencies with the administrative record[,]" Pls.' Mem. ISO Mot. to Compel 1 [Doc. No. 67]. First, Plaintiffs assert that there are certain "missing documents" that should have been included in the administrative record and request that the court compel Defendants to complete the administrative record. Id. at 4–10. Second, Plaintiffs request that the court order Defendants to produce a privilege log for any withheld documents. Id. at 10–13. Third, Plaintiffs assert that they are "entitled to limited discovery" to rebut Defendants' pretextual explanations for the elimination of CRS. Id. at 13–17.

---

[1] Plaintiffs' Motion for a Preliminary Injunction [Doc. No. 32] remains under advisement.

[2] A more fulsome background of this case is provided in the court's Memorandum and Order [Doc. No. 22], denying Plaintiffs' Motion for a Temporary Restraining Order [Doc. No. 2]. See Mem. & Order 2–5 [Doc. No. 22].

At a status conference held on January 22, 2026, the court directed Defendants to refile the Administrative Record [Doc. No. 47-1] with full rather than partial documents and to include "a certification attesting that the Administrative Record, and the documents contained therein, are complete." Elec. Order [Doc. No. 79]. On February 11, 2025, Defendants filed an Amended Administrative Record [Doc. No. 84-1] and Refiled Certification [Doc. No. 84]. The court will treat Plaintiffs' Motion to Compel [Doc. No. 65] as directed toward the Amended Administrative Record [Doc. No. 84-1].

**II.     Completeness**

    A.     Standard of Review

"The focal point of APA review is the existing administrative record." Atieh v. Riordan, 727 F.3d 73, 76 (1st Cir. 2013) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)). Specifically, "[w]hen reviewing an agency's decision under the arbitrary and capricious standard, 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" Housatonic River Initiative v. U.S. Env't Prot. Agency, New Eng. Region, 75 F.4th 248, 278 (1st Cir. 2023) (quoting City of Taunton, Mass. v. U.S. Env't Prot. Agency, 895 F.3d 120, 127 (1st Cir. 2018)). Generally, "APA review . . . involves neither discovery nor trial." Atieh, 727 F.3d at 76.

An administrative record consists of "all documents and materials directly or indirectly considered by [the] agency decision-makers and includes evidence contrary to the agency's position." Town of Norfolk v. U.S. Army Corps of Eng'rs, 137 F.R.D. 183, 185 (D. Mass. 1991) (internal quotations omitted), aff'd, 968 F.2d 1438 (1st Cir. 1992). An agency's "designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir.

2019) (internal citations omitted); see Postal Serv. v. Gregory, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies[.]").

To rebut this presumption, courts have required plaintiffs to show "clear evidence" that the record, as designated, is incomplete, see Roe v. Mayorkas, 2024 WL 5198705, at *2 (D. Mass. Oct. 2, 2024), that is, "a strong, substantial or prima facie showing that the record is incomplete." S.C. Coastal Conserv. League v. U.S. Army Corps of Eng'rs, 611 F. Supp. 3d 136, 142 (D.S.C. 2020) (cleaned up); see Vidal v. Duke, 2017 WL 8773110, at *3 (E.D.N.Y. Oct. 17, 2017) ("[T]he presumption that the agency produced the complete administrative record may be rebutted by 'clear evidence' that the record omits relevant materials[.]") (citing Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)). "[N]o showing of bad faith is required[.]" S.C. Coastal Conserv. League, 611 F. Supp. 3d at 142.

The "clear evidence" standard may be satisfied when a plaintiff identifies "reasonable, non-speculative grounds for [] belief that the documents were considered" by the agency and not included in the record. Ctr. For Food Safety v. Perdue, 2021 WL 8532247, at *4 (N.D. Cal. Nov. 5, 2021); see Wildearth Guardians v. U.S. Forest Serv., 713 F. Supp. 2d 1243, 1253 (D. Colo. 2010) (Plaintiff must show "by clear evidence that the record fails to include documents or materials considered by [Defendants] in reaching the challenged decision."); Pacific Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps. Of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) ("[Plaintiff] must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.").

    B.  Documents Considered by the Agency

Plaintiffs assert that Defendants improperly excluded from the Administrative Record three categories of documents regarding the proposed elimination and ultimate reorganization of

4

CRS that were considered by the agency: (1) memoranda written by Julius Nam, CRS's supervisory official during the relevant timeframe; (2) email correspondence between Nam and other DOJ leaders; and (3) Office of Management and Budget ("OMB") and Office of Personal Management ("OPM") materials. See Pls.' Mem. ISO Mot. to Compel 6–9 [Doc. No. 67].

The record submitted by Defendants consists of eleven documents. See Am. Admin. R. [Doc. No. 84-1]. The majority of these documents are communications between DOJ and Congress during the Summer and Fall of 2025, in which DOJ described its intent to first eliminate and then reorganize CRS from a standalone component with a Presidentially-appointed and Senate-confirmed director to an office within the Executive Office of the U.S. Attorney ("EOUSA"). See Am. Admin. R. [Doc. No. 84-1] (Admin. R. Doc. Nos. 2, 4–11); 42 U.S.C. § 2000g. Two of the documents are internal memoranda, one written by the Deputy Attorney General, dated March 25, 2025, and the other written by CRS employees, dated July 3, 2025. Id. (Admin. R. Doc. Nos. 1 and 3).

The two memoranda are part of DOJ's efforts to comply with Executive Order 14210, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative. Exec. Order No. 14210, 90 FR 9669 (Feb. 11, 2025). That Executive Order required all departments to "undertake preparations to initiate large-scale reductions in force" and develop "Agency Reorganization Plans" discussing "whether the agency or any of its subcomponents should be eliminated or consolidated." Id. at 9669–70. The Executive Order required departments to submit their "Agency Reorganization Plans" to OMB for review. Id. The March 25, 2025 memo written by the Deputy Attorney General seeks feedback from DOJ components regarding the DOJ's Reduction in Force ("RIF") and Reorganization Plan, and the July 3, 2025

5

memo written by CRS employees responds to that request for feedback. See Am. Admin. R. 1–3, 269–275 [Doc No. 84-1].

Plaintiffs rely primarily on the declaration of Julius Nam to support their contention that Defendants omitted significant portions of the record. See Nam Decl. ¶¶ 2–3 [Doc. No. 66-1]. Nam states that he "participated in numerous telephone and video calls, in-person discussions, and email exchanges with officials at DOJ about the Administration's shifting plans for CRS" and that he was "copied on other written communications about the decisionmaking process." Id. ¶ 5. Nam describes seven memoranda he submitted to DOJ officials spanning February through July 2025. Id. ¶ 9. Nam also states that it was his understanding in the Spring of 2025 that OMB directed DOJ to eliminate CRS and was "involved in the decisionmaking process[.]" Id. ¶ 11. Further, Plaintiffs reference documents regarding CRS prepared for OMB and the OPM. See Pls.' Mem. 6 [Doc. No. 67].

The administrative record consists of all the documents and materials directly or indirectly considered by DOJ in its decisionmaking process regarding the realignment of CRS. See Pacific Shores, 448 F. Supp. 2d at 4 (citing Maritel, Inc. v. Collins, 422 F. Supp. 2d 188, 196 (D.D.C. 2006)); Thompson v. U.S. Dep't. of Labor, 885 F.2d 551, 555 (9th Cir. 1989) (The administrative record includes not only "those documents that the agency has compiled and submitted as 'the' administrative record," but "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position.") (internal quotations and emphasis omitted).

Defendants deny that either OMB or OPM had a role in DOJ's decisionmaking and argue that other agencies' materials are irrelevant and properly excluded from the administrative record. See Defs.' Mem. 7–8 [Doc. No. 71]. The issue, however, is not what role OMB or OPM

6

played in deciding the outcome, but what material <u>DOJ</u> considered in its decision, regardless of the source. Given the plain language of Executive Order 14210, which required DOJ to submit its Plans to OMB, as well as Nam's attestation as to his understanding that OMB "direct[ed] the elimination of CRS," <u>see</u> Nam Decl. ¶ 11 [Doc. No. 66-1], it seems highly likely that OMB's communications were considered by DOJ in reaching its decision. Therefore, where Defendants have not directly disputed that the OMB and OPM materials were considered by DOJ, the court finds that the combined force of Executive Order 14210 and the Nam Declaration provides "clear evidence" that DOJ considered the material from OMB and OPM in deciding whether to eliminate or realign CRS. Such evidence rebuts the "presumption of regularity" generally afforded to the government and demonstrates that, unless the material is privileged, the administrative record is incomplete. <u>Bar MK Ranches</u>, 994 F.2d at 740. Accordingly, Defendants shall supplement the Administrative Record with the material from OMB and OPM that was considered by DOJ.

It also seems unavoidable that DOJ would have considered the memoranda or email of CRS's supervisory official, Julius Nam, in deciding how CRS fit in with DOJ's RIF and Reorganization Plan. <u>See</u> Nam Decl. ¶ 3, 5, 9 [Doc. No. 66-1]. Defendants have not asserted that DOJ is unaware of the memoranda and email described by Nam and Plaintiffs, or that DOJ did not consider those documents in its decisionmaking. Instead, Defendants have asserted only that such information is privileged and should be excluded from the administrative record. <u>See</u> Defs.' Mem. 6 [Doc. No. 71]. The deliberative process privilege is discussed below.

7

### III.     Deliberative Process Privilege

    A.     Standard of Review

Materials subject to the deliberative process privilege may be excluded from the administrative record. See Town of Norfolk, 968 F.2d at 1458–59. "The deliberative process privilege protects the internal deliberations of an agency to prevent 'injury to the quality of agency decisions.'" Id. at 1458 (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975)); see Michael Ray Harris, *Standing in the Way of Judicial Review*, 53 St. Louis U. L. J. 349, 359–63 (2009) (explaining the historical origins of the privilege as seeking to ensure frank and open discussion among government officials, which in turn enhances the quality of government decisionmaking). For the privilege to apply, "a document must be (1) pre-decisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995) (quoting National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988)). Moreover, the privilege is a qualified one, and "in determining whether to honor an assertion of privilege, a court must weigh competing interests." Id.; see Redland Soccer Club v. Dep't of the Army, 55 F.3d 827, 856 (3d Cir. 1995) ("the deliberative process privilege, like other executive privileges, should be narrowly construed."). Finally, "[f]actual information that may be segregated from the rest of the document is not protected by the privilege." Town of Norfolk, 968 F.2d at 1458 (citing 5 U.S.C. § 552).

    B.     Applying the Deliberative Process Privilege

As explained above, the administrative record is comprised of all the documents and materials considered by DOJ in deciding to realign CRS. See Atieh, 727 F.3d at 76; Defs.' Mem.

8

12 [Doc. No. 71] ("The inquiry is whether the agency relied on or considered certain documents[.]").

Defendants argue that Nam's memoranda were all deliberative and predecisional in nature, based on Nam's own description, where the materials were created in response to and as a part of the internal decision-making about the CRS realignment as it was ongoing. See Defs.' Mem. 10 [Doc. No. 71]. But the privilege invoked by Defendants only shields deliberative materials (e.g., "advisory opinions," NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)), while "[f]actual information that may be segregated from the rest of the document is not protected by the privilege." Town of Norfolk, 968 F.2d at 1458 (citing 5 U.S.C. § 552).

Accordingly, where factual information provided to the decision-makers may be segregated from deliberative materials, Defendants must complete the administrative record with that factual information, and "redact[] the protected material[.]" Inst. For Fisheries Res. v. Burwell, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017). Production of the materials identified in the Nam Declaration with redactions as to internal deliberations strikes the appropriate balance to address the "tension" between APA review and the deliberative process privilege. Friends of the Clearwater v. Higgins, 523 F. Supp. 3d 1213, 1226–28 (D. Idaho 2021).

The court considers further whether to require a privilege log as to the redactions. There is case support for requiring such a log. See, e.g., Inst. for Fisheries Resources, 2017 WL 89003, at *1 ("If a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege."); Clinch Coalition v. U.S. Forest Serv., 597 F. Supp. 3d 916, 924–25 (W.D. Va. 2022) (While documents may be withheld under a deliberate process privilege, "it does not follow that the agency should have the final, unreviewable word on that designation. Nor does it follow that

predecisional deliberative documents are categorically irrelevant."). Nonetheless, the court will defer at this point as to the requirement for a privilege log regarding the redactions. Plaintiffs may renew their request for a privilege log if necessary following Defendants' completion of the administrative record as ordered here.

### IV.     Supplementation

Plaintiffs assert that extra-record discovery is necessary to (1) afford Plaintiffs the opportunity to depose the witnesses identified in Defendants' initial disclosures; and (2) probe whether Defendants' proffered reason for the agency decisionmaking is pretextual. See Pls.' Mem. 13–17 [Doc. No. 67].

Reserving all arguments, Defendants have stated that they intend to defend this case on the Administrative Record alone and will not rely on any witness testimony. See Notice [Doc. No. 89]. Accordingly, the court turns to Plaintiffs' second argument, that extra-record discovery is warranted where there is a strong showing of bad faith or improper behavior by the agency decisionmakers. See Pls.' Mem. 13–15 [Doc. No. 67] (citing Dep't of Commerce v. New York, 588 U.S. 752, 785 (2018)).

In Dep't of Commerce, the Supreme Court considered whether the trial court had properly found that the Secretary of Commerce's rationale for including a citizenship question on the 2020 Census was pretextual. See 588 U.S. at 780. Respondents moved for both completion of the administrative record and extra-record discovery, and the trial court granted both requests at the same hearing. Id. The Supreme Court found that the trial court's order granting extra-record discovery was "premature," and that based on the record "[a]t that time, the most that was warranted was the order to complete the administrative record." Id. at 782. The Court nonetheless reviewed the trial court's order "in light of . . . the extra-record evidence" that came

10

later and the Court ultimately found the supplementation order to be "justified." Id. "[U]nlike a typical case in which an agency may have both stated and unstated reasons for a decision," the Court observed, the Secretary's "VRA enforcement rationale—the sole stated reason—seems to have been contrived." Id. at 784. Accordingly, extra-record discovery was justified given the "strong showing of bad faith or improper behavior." Id. at 781 (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)); accord City of Taunton v. EPA, 895 F.3d 120, 127–28 (1st Cir. 2018).

The court finds on the present record that extra-record discovery would be premature. Dep't of Commerce, 588 U.S. at 781–82. This determination is without prejudice to the renewal of the motion if warranted following completion of the record.

### V.    Conclusion

Accordingly, where Plaintiffs have proffered clear evidence sufficient to rebut the presumption of regularity typically afforded to the government, Defendants have not disputed that DOJ considered the memoranda and emails and other material identified in the Nam Declaration, and the court has rejected Defendants' contention that material may be excluded from the administrative record because it was prepared by OMB and OPM, Defendants are ordered to complete the Administrative Record with the additional material, redacted as necessary to protect the internal deliberations of the DOJ decision-makers, no later than March 9, 2026. Plaintiffs' requests for a privilege log and supplementation of the Administrative Record are denied without prejudice.

IT IS SO ORDERED.

February 25, 2026                          /s/ Indira Talwani
                                           United States District Judge